IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 1:21-CV-171-MOC-DCK

STEPHEN SCHNIPER, DOROTHY ANN )
BEASLEY-SCHNIPER, and SPECIALTY )
FOODS OF ALABAMA, INC., d/b/a )
TSITALIA IMPORTS, )
 )
      Plaintiffs, )
 )
v. ) **ORDER**
 )
SERVISFIRST BANCSHARES, INC., d/b/a )
SERVISFIRST BANK, and WILLIAM )
RICHARD BOYD, JR., Substitute Trustee, )
 )
      Defendants. )
 )

**THIS MATTER IS BEFORE THE COURT** on "Defendant ServisFirst's Motion To Transfer" (Document No. 14) filed August 13, 2021. This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and immediate review is appropriate. Having carefully considered the motion and the record, the undersigned will grant the motion.

### I. BACKGROUND

Plaintiffs Stephen Schniper, Dorothy Ann Beasley-Schniper (collectively, "the Schnipers"), and Specialty Foods of Alabama, Inc. ("Specialty Foods") (collectively, "Plaintiffs") initiated this action with the filing of a "Complaint" on June 7, 2021 in the North Carolina Superior Court for Avery County against Defendants ServisFirst Bancshares, Inc. ("ServisFirst") and William Richard Boyd, Jr., the Substitute Trustee, ("Boyd") (collectively, "Defendants"). (Document No. 1-1). On July 2, 2021, Defendants removed the case to this Court. (Document No. 1).

The Complaint alleges four claims against Defendants: (1) a claim to enjoin the foreclosure sale of the Schnipers' real property in Avery County pursuant to N.C. Gen. Stat. § 45-21.34 and Rule 65 of the North Carolina Rules of Civil Procedure; (2) a claim for unfair and deceptive commercial practices pursuant to N.C. Gen. Stat. § 75-16; (3) a claim for breach of contract and the duty of good faith and fair dealing; and (4) a claim for tortious interference with contract and prospective economic advantage. (Document No. 1-1, pp. 14-19).

The factual background underpinning this dispute is complex and relevant to the instant action. Thus, for purposes of grounding the instant lawsuit in context, the undersigned will briefly describe the web of litigation in various courts in which the parties to this dispute have been involved.

The parties' dispute arises out of the borrower-lender relationship between Plaintiffs and Defendant ServisFirst, which began in 2014. (Document No. 15, p. 3). Ms. Schniper was the sole owner of Specialty Foods, which conducted its business in the state of Alabama. (Document No. 1-1, p. 6). In spring 2015, "Specialty Foods executed a note…in favor of ServisFirst, with Ms. Schniper individually, as guarantor in the amount of $3,000,000." (Document No. 15, p. 3). Various changes to the loan agreement were made over time, resulting in an increase in the loan amount to $4.75 million and extensions of the maturity date of the loan. Id. at pp. 3-4.

In 2018, Plaintiffs allege that Specialty Foods was awash with financial problems, on account of both import tariffs and a change in computer software that they allege ServisFirst forced them to make. (Document No. 1-1, p. 8). Plaintiffs contend that the new software led to a security breach and embezzlement of corporate funds by employees exploiting the change in the computer system. Id. Given that context, Plaintiffs needed to make a final change to the terms of the loan agreement, by which the principal debt remained the same but the maturity date of the loan was

2

extended to May 1, 2019. (Document No. 15, p. 4). As security for the debt that Specialty Foods owed to ServisFirst, the Schnipers' real property in Avery County was pledged in a Deed of Trust and Hypothecated Security Addendum. Id. at p. 5. Following execution of these changes to the loan agreement and the pledging of the Avery County property as collateral for the loan, Plaintiffs allege that ServisFirst began to take a series of inappropriate actions against them. Id. Plaintiffs contend that while they were negotiating with a separate bank to pay off the loan with ServisFirst, ServisFirst declared them in default – dooming the loan arrangement with the other bank – and contacted Specialty Foods' customers and vendors to let them know of the default. (Document No. 1-1, p. 9). Plaintiffs became further financially stressed on account of limited cash flow due to waning trust from customers and vendors. Id.

After Plaintiffs defaulted on the loan, ServisFirst initiated a lawsuit in Alabama state court to collect on the loan. (Document No. 15, p. 6). Specialty Foods and Ms. Schniper were named as Defendants, and they filed counterclaims, focusing on ServisFirst's alleged misconduct described above. Id. Pursuant to a Forbearance Agreement agreed to about a month after the Alabama state court lawsuit began, "the parties agreed that ServisFirst would extend the terms of its loan to November 9, 2019 and forbear its collection efforts, including the prosecution of its claims in the Alabama lawsuit," and Ms. Schniper and Specialty Foods agreed to drop their counterclaims. Id. at p. 7.

Plaintiffs then allege they found yet another – a third – bank from which to obtain financing to pay off the loan owed to ServisFirst. (Document No. 1-1, p. 10). However, one of the bank's conditions for the loan was that the Alabama state court lawsuit be dismissed. Id. at p. 11. ServisFirst "unreasonably refused…in a calculated effort to kill the loans with Wells Fargo [the third bank]." Id. Furthermore, Plaintiffs contend that ServisFirst proceeded with a foreclosure

3

sale of one of Specialty Foods' commercial buildings despite a private party having offered to buy it.  Id.

In order "[t]o protect the [commercial building] asset, Mrs. Schniper filed for bankruptcy protection in Alabama [in January 2020], which stayed the sale until October 2020."  (Document No. 1-1, p. 11).  Specialty Foods soon after similarly "filed for Chapter 11 protection" in the United States Bankruptcy Court for the Northern District of Alabama.  (Document No. 15, p. 8).  At this point, Ms. Schniper, Specialty Foods, and ServisFirst were thus involved in three lawsuits total – the Alabama state court lawsuit, and two lawsuits in federal bankruptcy court in Alabama.[1]  In both Ms. Schniper's individual bankruptcy case and in Specialty Foods' case, the Bankruptcy Court for the Northern District of Alabama entered orders allowing ServisFirst to foreclose on the Avery County property.  Id. at p. 9.

During the pendency of the Alabama bankruptcy cases, Plaintiffs contend that they negotiated with "prospective purchasers about the [sale] of Specialty Foods."  (Document No. 1-1, p. 11).  "[T]ogether with the sale of the remaining Alabama real property," the sale would have been "more than sufficient to satisfy the alleged debt, without any action against the Avery County property."  Id.  The Bankruptcy Court in the Specialty Foods case entered an Order "approving the sale of the business assets," and a similar Order was entered "in Ms. Schniper's individual case approving the sale of the commercial building occupied by Specialty Foods."  (Document No. 15, p. 9).  "Plaintiffs allege that ServisFirst then engaged in…disruptive conduct with the purchasers

---

[1] Notably, Ms. Schniper's individual bankruptcy case in Alabama was dismissed for cause on October 22, 2020. (Document No. 15-23).  However, Specialty Foods' bankruptcy case remains pending in the United States Bankruptcy Court for the Northern District of Alabama, following its conversion to a Chapter 7 case on November 18, 2020.  In re Specialty Foods of Alabama, Inc., No. 20-00279-DSC7 (Bankr. N.D. Ala. filed Jan. 22, 2020).  The Court may properly consider such orders because "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir. 1989) (quoting St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)).

4

and caused them to terminate the agreement in September of 2020." Id. Allegedly, ServisFirst "then sold [to the same buyers who previously put in an offer] at foreclosure the commercial warehouse property located in Birmingham [] for" less than the private buyers had offered to pay to Plaintiffs previously." (Document No. 1-1, p. 12). Plaintiffs further allege "the accounts receivable of Specialty Foods of approximately $1,000,000 were taken by [ServisFirst] [and sold to the same buyer] and have never been accounted for or credited toward the alleged debt." Id. at p. 13.

On October 1, 2020, the Bankruptcy Court in Alabama "issued orders in both cases finding that the automatic stay had terminated by virtue of its prior orders." (Document No. 15, pp. 9-10). Following the termination of the stay, the foreclosure sale was allowed to proceed – thus prompting ServisFirst to initiate foreclosure proceedings in Avery County. (Document No. 1-1, p. 13).

After ServisFirst initiated foreclosure proceedings in North Carolina state court in Avery County, Mr. Schniper "filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Alabama." (Document No. 15, p. 10). It is worth reflecting at this point that Plaintiffs had thus initiated three federal bankruptcy cases in the Northern District of Alabama – Ms. Schniper's case (which, as mentioned, was dismissed in October 2020), Specialty Foods' case (which remains pending), and Mr. Schniper's case. As in the earlier-filed cases, in Mr. Schniper's case, the Bankruptcy Court terminated the automatic stay effective January 1, 2021, allowing the foreclosure of the Avery County property to proceed. (Document No. 15-24, p. 2). Mr. Schniper's case was dismissed on January 29, 2021. (Document No. 15-25, p. 2).

Just two days prior to Mr. Schniper's case in federal bankruptcy court in Alabama being dismissed, the North Carolina Superior Court in Avery County held a hearing following which the

"foreclosure sale of the [Schnipers' Avery County] property [was allowed] to proceed." (Document No. 1-1, p. 13). The sale was allegedly scheduled for March 2, 2021. Id. Plaintiffs contend that they did not file an appeal from the order permitting the sale to proceed because they "were not represented by counsel at the…hearing [] and did not know that they were able to file an appeal." Id.

Perhaps in yet another effort to forestall the foreclosure of the Avery County property, Mr. Schniper *again* filed a petition for bankruptcy under Chapter 13 in the Northern District of Alabama's Bankruptcy Court on March 4, 2021. (Document No. 15-4). According to Plaintiffs' allegations, that bankruptcy action was dismissed. (Document No. 1-1, p. 14). The foreclosure sale was thus rescheduled for June 17, 2021. Id. The instant lawsuit was filed in North Carolina Superior Court in the interim on June 7, 2021. (Document No. 1-1). As stated at the opening of this section, Defendants removed the case to this Court on July 2, 2021. (Document No. 1).

Defendant ServisFirst filed its "…Motion To Transfer" (Document No. 14) and "Memorandum Of Law In Support Of Defendant ServisFirst's Motion To Transfer" (Document No. 15) on August 13, 2021.[2] In its Motion to Transfer, ServisFirst notes that it "consulted with counsel for Co-Defendant William Richard Boyd, Jr., Substitute Trustee[,] who consents to this motion to transfer." (Document No. 14, p. 2). Plaintiffs filed their "Response To Defendant ServisFirst's Motion To Transfer" (Document No. 23) on September 10, 2021. ServisFirst filed its "Reply In Support Of Defendant ServisFirsts' Motion to Transfer" (Document No. 26) on September 17, 2021.

---

[2] Of note, Defendant ServisFirst also filed a "…Motion To Dismiss" (Document No. 12) on August 9, 2021 that remains pending. Plaintiffs also filed "Plaintiffs' Motion To Dismiss Without Prejudice" (Document No. 20) on September 7, 2021 which seeks pursuant to Rule 41(a)(2) to dismiss Plaintiff's first claim to enjoin the foreclosure and their post-July 2019 claims – explicitly, they argue, so that Ms. Schniper "may refile [her] equitable claims relating to enjoining a foreclosure sale in Superior Court." (Document No. 20, p. 2).

Notably, on September 16, 2021, Plaintiffs filed a "Request For Status Conference Or Hearing On Plaintiffs' Motion For Temporary Restraining Order" (Document No. 25).[3] In their filing, Plaintiffs indicate that the foreclosure sale of their Avery County property would become final at close of business on September 20, 2021, after "the expiration of the 10-day upset bid period" commencing following "the foreclosure sale that occurred on 9 September 2021." Id. at p. 2. The sale apparently was rescheduled for September 9 given that the state court in Avery County did not enter an injunction after Plaintiffs filed a complaint there in June 2021. See In re Dorothy Ann Beasley-Schniper, No. 21-10174, Document No. 23, p. 4 (Bankr. W.D.N.C. Oct. 21, 2021). Furthermore, as important context for the status of the instant action and the pending motion to transfer before this Court, ServisFirst notes in its "Reply In Support Of Defendant ServisFirsts' Motion To Transfer" that Plaintiffs filed a bankruptcy petition in the United States Bankruptcy Court for the Western District of North Carolina just prior to the foreclosure sale becoming final in state court in Avery County. (Document No. 30, pp. 3-4). The effect of Plaintiff's filing a petition in federal bankruptcy court in this district was to commence an automatic stay of the foreclosure sale pursuant to 11 U.S.C. § 362. In re Dorothy Ann Beasley-Schniper, No. 21-10174, Document No. 23 (Bankr. W.D.N.C. Oct. 21, 2021).

However, Judge Hodges issued an order annulling the automatic stay, such that the foreclosure sale "and any upset bid periods expiring thereafter, [were] not affected by the automatic stay of [the Western District of North Carolina] bankruptcy case in any way whatsoever, the same as if the automatic stay in this bankruptcy case never existed." Id. at p. 5. On December 23, 2021, Judge Hodges issued an order dismissing the Western District of North Carolina bankruptcy case because of "the failure of the Debtor to pay first monies, failure to attend the

---

[3] After review of the docket in this case, the undersigned highlights that Plaintiffs have not actually made a formal motion for a temporary restraining order.

section 341(a) meeting, and failure to file sufficient documents to implement the plan." In re Dorothy Ann Beasley-Schniper, No. 21-10174, Document No. 43 (Bankr. W.D.N.C. Dec. 23, 2021).

The pending motion is now ripe for review and disposition.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1412, "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of parties." And, pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." As analyzed in the discussion section below, this Court must decide whether to analyze the transfer argument pursuant to § 1412 or § 1404(a).

### a. 28 U.S.C. § 1412

Importantly, with respect to § 1412, "the Fourth Circuit has not resolved whether § 1412 or § 1404 governs" in situations in which a court is considering whether to transfer a case that is "merely 'related to' a bankruptcy proceeding under Title 11." Commercial Credit Grp. Inc. v. LCF Holdings LLC, 2021 WL 4340508, at *2 (W.D.N.C. Sept. 23, 2021); see also Garlock Sealing Techs., LLC v. Bartlett, 2015 WL 1013441, at *, n.1 (W.D.N.C. Mar. 9, 2015) ("the law in the Fourth Circuit is not entirely settled as to whether 28 U.S.C. § 1412 or 28 U.S.C. § 1404 is the appropriate statute under which to seek transfer of a case that is 'related to' a case under Title 11"). The undersigned highlights that some district courts in the Fourth Circuit have concluded that § 1412 is an appropriate vehicle for transfer of cases related to Title 11 – but again, this conclusion has not been affirmatively adopted or rejected by the Fourth Circuit. See Yolo Capital,

Inc. v. Normand, 2018 WL 576316, at *2 (W.D.N.C. Jan. 26, 2018); Hilton Worldwide, Inc. Global Benefits Admin. Comm. v. Caesars Entm't Corp., 532 B.R. 259, 273 (E.D. Va. 2015); Coffey Creek Assocs. Ltd. P'ship v. Guardian Protection Servs., Inc., 2010 WL 1849023, at *5 (W.D.N.C. May 7, 2010); Dunlap v. Friedman's, Inc., 331 B.R. 674, 678, 680 (S.D. W. Va. 2005) ("section 1404 would, in perhaps a large number of cases, thwart transfer…because the related-to action might not have met…the jurisdictional or venue prerequisites making it capable of being 'brought' in the home court where the bankruptcy case is pending…section 1412 [is thus] the appropriate statute for venue transfer purposes in [a] related-to action").

Notwithstanding the lack of conclusive authority regarding which statute would be the appropriate vehicle for transfer in this "related to" bankruptcy case, a threshold determination of whether the claims are indeed "related to" bankruptcy is necessary. Brown v. Fargo, 463 B.R. 332, 338 (M.D.N.C. 2011). An action "is related to bankruptcy [where] *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." In re Celotex Corp., 124 F.3d 619, 625 (4th Cir. 1997) (quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). An effect on the estate is measured by whether "the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." In re Celotex Corp., 124 F.3d at 625-26 (quoting Pacor, Inc., 743 F.2d at 994). "This test does not require with any certainty or likelihood that the proceeding could conceivably have an effect on the bankruptcy estate, the possibility itself is sufficient." In re Bestwall LLC, 2022 WL 67469, at *5 (W.D.N.C. Jan. 6, 2022).

Once the "related to" analysis has been conducted, the district court can then move to evaluate whether the requirements for transfer under the statute have been met. Importantly,

9

federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in *or related to* cases under title 11." 28 U.S.C. § 1334(b) (emphasis added). The burden is upon the party making the transfer motion to show "by a preponderance of the evidence that either the interest of justice or the convenience of the parties would be served by the requested transfer." Yolo Capital, Inc., 2018 WL 576316, at *2. To aid the Court in evaluating whether transfer is warranted in the interest of justice under § 1412, there are various factors that district courts look to, including

> (a) the economic administration of the bankruptcy estate; (b) the presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending; (c) judicial efficiency; (d) ability to receive a fair trial; (e) the state's interests in having local controversies decided within its borders; (f) enforceability of any judgment rendered; and (g) the plaintiff's original choice of forum.

Id. (citing Blanton v. IMN Fin. Corp., 260 B.R. 257, 266 (M.D.N.C. 2001)). "The most important of these factors is…the economic and efficient administration of the estate." Dunlap, 331 B.R. at 680 (internal quotations and citations omitted).

### b. 28 U.S.C. § 1404(a)

Pursuant to 28 U.S.C. § 1404(a), a district court can transfer a case to a different venue both "[f]or the convenience of parties and witnesses" and "in the interest of justice" – but only if at least one of two conditions is met. The first scenario under which a district court can transfer a case is when the case "might have been brought" in that other federal district court. Id. Thus, under that scenario, the transferee court needs to possess a basis for possessing subject-matter jurisdiction over the case – ordinarily through diversity jurisdiction or federal question jurisdiction. Hoffman v. Blaski, 363 U.S. 335, 344 (1960) ("[i]f when a suit is commenced, plaintiff has a right to sue in that district…it is a district where the action might have been brought" (internal quotations

and citations omitted));  Unitrin Auto and Home Ins. Co. v. Bastida, 2009 WL 3591190, at *2, n.1 (W.D.N.C. Oct. 26, 2009) ("[p]rimarily federal courts have original jurisdiction over two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331, and (2) diversity jurisdiction pursuant to 28 U.S.C. § 1332").  Under the other scenario permitting a district court to transfer under 1404(a) – which is not at issue in this case – all of the parties must consent to transfer to the new venue.  28 U.S.C. § 1404(a).

### III. DISCUSSION

Although there is a lack of conclusive authority from the Fourth Circuit resolving the issue of whether 28 U.S.C. § 1412 applies to the transfer of claims that are merely "related to" Title 11 – rather than arising under Title 11 themselves – the undersigned will follow the approach taken by the vast majority of district courts in the Fourth Circuit.  The majority view among district courts in the Fourth Circuit (with the exception of just one outlier case that the undersigned could find) is that 28 U.S.C. § 1412 rather than 28 U.S.C. § 1404(a) applies to the transfer of cases that are related to Title 11 but that do not themselves arise under Title 11.  See Gibbs v. Rees, 2018 WL 1460705, at *7 (E.D. Va. Mar. 23, 2018) ("federal district courts diverge over whether § 1412 or § 1404(a) should govern transfer of actions 'related to' bankruptcy proceedings…[but] no similar disagreement exists within the Fourth Circuit [because] [n]early a decade of intra-circuit cases have decided that § 1412 governs the transfer of 'related to' cases brought under title 11"); Coffey Creek Assocs. Ltd. P'ship, 2010 WL 1849023, at *5.  But see Fitzgibbon v. Radack, 597 B.R. 836, 841 (E.D. Va. 2019) (holding that § 1404(a) rather than § 1412 applied to the transfer of cases involving claims merely related to Title 11).  Thus, the transfer analysis will proceed

11

pursuant to 28 U.S.C. § 1412. For the reasons explained below, the undersigned concludes that transfer of this matter to the Northern District of Alabama is appropriate pursuant to § 1412.[4]

1. **Plaintiffs' Claims are Related to their Bankruptcy Cases in the Northern District of Alabama**

Since the Court agrees with the proposition that § 1412 "applies not only to cases brought under title 11, but also to cases '*related to*' cases brought under title 11," the Court must first determine whether Plaintiffs' claims are indeed related to title 11. Gibbs, 2018 WL 1460705, at *7. The undersigned finds based on the following analysis that they are.

As stated above in the Standard of Review section, an action "is related to bankruptcy [where] *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*." In re Celotex Corp., 124 F.3d at 625 (quoting Pacor, Inc., 743 F.2d at 994). Any possible effect on the estate flowing from resolution of the claims is enough for the "related to" classification to be satisfied – no definite certainty of an effect is required. See In re Bestwall LLC, 2022 WL 67469, at *5. There are various reasons supporting the conclusion that how a court resolves Plaintiffs' claims in the instant lawsuit will likely have an effect on the bankruptcy estate. Importantly, the undersigned notes at the outset that Plaintiffs each filed bankruptcy cases in the United States Bankruptcy Court for the Northern District of Alabama – one of which, the case in which Specialty Foods filed as a debtor, remains open. See In re Specialty Foods of Alabama, Inc, No. 20-00279-DSC7, Document No. 275 (Bankr. N.D. Ala. Aug. 25, 2021). The other cases – filed by the two Schniper Plaintiffs as individual debtors in three separate bankruptcy cases – were each dismissed by the Bankruptcy Court. See In re Stephen H. Schniper,

---

[4] Nonetheless, the Court finds that whether the analysis in this case proceeded pursuant to § 1412 or § 1404(a), "the outcome would have been the same," as it is in many cases where there is no bar to the transferee court's exercise of jurisdiction. Yolo Capital Inc. v. Normand, 2018 WL 576316, at *2, n.2 (W.D.N.C. Jan. 26, 2018).

No. 21-00492-TOM13, Document No. 25 (Bankr. N.D. Ala. May 7, 2021); In re Stephen H. Schniper, No. 20-03443-TOM13, Document No. 49 (Bankr. N.D. Ala. Jan. 29, 2021); In re Dorothy Ann Beasley-Schniper, No. 20-00074-DSC11, Document No. 143 (Bankr. N.D. Ala. Oct. 22, 2020).

First, Plaintiffs' state law claims for unfair and deceptive commercial practices, breach of contract, and tortious interference with contract will likely affect administration of the bankruptcy estates because the way in which a court handles the allegations "that ServisFirst engaged in tortious misconduct and interfered with efforts to sell [Specialty Foods'] assets prior to, and during, its bankruptcy case" almost certainly will impact the liabilities or rights of one or more of the Plaintiffs – all of whom were debtors in various bankruptcy cases in the Northern District of Alabama. (Document No. 15, p. 16). These factual allegations of interference with Plaintiffs' efforts to pay back their debts to ServisFirst underpin each of Plaintiffs' three claims. As ServisFirst states in its brief supporting its motion to transfer, the allegations that ServisFirst "interfere[ed] with the sales approved by the bankruptcy court would likely constitute contempt of court and would trigger claims in favor of the bankruptcy estates in those cases." Id. The district court for the Northern District of Alabama can, upon transfer of this case, refer the case to the United States Bankruptcy Court for the Northern District of Alabama if it so chooses. See In re Bestwall LLC, 2022 WL 67469, at *5 ("[d]istrict courts are authorized to refer these cases to bankruptcy judges in their district") (citing 28 U.S.C. § 157(a)). And, since Plaintiffs' claims are plainly "based on and intertwined with [(at least in part)] various bankruptcy court orders…there [is] enough of a nexus to the bankruptcy plan or proceeding" for satisfaction of the "related to" classification. In re Kachkar, 769 F. App'x 673, 679 (11th Cir. 2019).

13

Similarly, as Defendant ServisFirst highlights in its brief, "Plaintiffs are challenging the amount of debt they owe to ServisFirst Bank…[their claim is that] their debt was not properly credited when ServisFirst liquidated their various other assets…[t]hese claims [if resolved in favor of Plaintiffs]…could not only offset the amounts owed to ServisFirst Bank but even potentially provide funds to pay other creditors." (Document No. 15, p. 17). Clearly, then, how a court resolves the unfair and deceptive trade practices, breach of contract, and tortious interference with contract claims "could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively)." In re Celotex Corp., 124 F.3d at 625-26 (quoting Pacor, Inc., 743 F.2d at 994). Standing alone, Plaintiffs' factual allegations that support each of its claims of ServisFirst's misconduct during the bankruptcy proceedings indicate a close nexus to the bankruptcy cases such that the tests for whether the claims are "related to" title 11 are undoubtedly satisfied.

A second reason why the claims could affect administration of the bankruptcy estate – and are therefore related to title 11 for purposes of § 1412 – is because these claims *belong* to the various bankruptcy estates. See Hilton Worldwide, Inc. Global Benefits Admin. Comm., 532 B.R. at 273 ("§ 1412 allows district courts to transfer non-title 11 cases to a district court where a bankruptcy proceeding is underway if the result of that case might affect the administration of the bankruptcy estate"). "The commencement of a bankruptcy case creates an estate that includes all legal and equitable interests of the Debtor in property as of the commencement of the case." In re Wilmoth, 412 B.R. 791, 794, n.2 (Bankr. E.D. Va. 2009) (citing 11 U.S.C. § 541). Moreover, "[i]f the debtor fails to list an asset of the estate in his schedules and this property is not administered before the case is closed, then the asset is not deemed abandoned under § 554(c)…[instead s]uch

14

property therefore remains property of the estate." In re Medley, 29 B.R. 84, 86-87 (Bankr. M.D. Tenn. 1983).

Here, the Specialty Foods case remains pending in the United States Bankruptcy Court for the Northern District of Alabama. Unquestionably, then, the claims here are included in the bankruptcy estate in that case. Furthermore, "while other Plaintiffs' bankruptcy cases have been dismissed, their claims…were never listed, scheduled, or otherwise disclosed to the bankruptcy court [in those respective cases]." (Document No. 15, p. 16). Those other claims, then, also remain part of the bankruptcy estates in the closed cases precisely because they were never disclosed to the bankruptcy court in Alabama. Given that the claims belong to the bankruptcy estates themselves, it is evident that resolution of the claims affects the administration of the bankruptcy estate.

2. **Transfer to the Northern District of Alabama is in the Interest of Justice Pursuant to § 1412**

Under § 1412, a court can mandate that a case be transferred "*either* in the interest of justice *or* for the convenience of the parties—a court need not find that both prongs are met to order a transfer." Gibbs, 2018 WL 1460705, at *14. Here, the undersigned will address the interest of justice factor, concluding that the interest of justice does favor transfer to the Northern District of Alabama.[5]

---

[5] Nonetheless, the undersigned concludes that even on the convenience of parties factor, the conclusion would be the same – § 1412 would warrant transfer. Particularly because "the majority of the allegedly tortious acts occurred in Alabama, the necessary proof is also likely to be there." (Document No. 15, p. 23). Furthermore, "the corporate parties both have principal places of business in Alabama, [meaning that] the majority of the relevant files and records are likely to be found there." Id. Still, the Court will not conduct a full analysis of the convenience of parties factor, because the interest of justice clearly favors transfer under § 1412. See Yolo Capital, Inc., 2018 WL 576316, at *3, n.3. Plaintiffs' assertion that the Northern District of Alabama would be an inconvenient forum in which to litigate their dispute is unfounded given that Plaintiffs have been or are already party to litigation occurring in that district in the United States Bankruptcy Court. See Hilton Worldwide, Inc. Global Benefits Admin. Comm., 532 B.R. at 275 ("plaintiffs' assertion that transfer to [a certain district] would be inconvenient is undermined considerably by the fact that they are already parties to [another] pending [bankruptcy] case in that district").

15

### a. The Economic and Efficient Administration of the Estate and the Presumption of Trying Cases Related to a Bankruptcy Case in the Court in which the Bankruptcy is Pending Favors Transfer

The first – and most important – factor to be weighed in the transfer analysis is whether transfer promotes the "economic and efficient administration of the bankruptcy estate." Gibbs, 2018 WL 1460705, at *14 (citing Dunlap, 331 B.R. at 680). Furthermore, on the second prong to be weighed in the analysis, "there is a presumption that the district hearing the bankruptcy case is the proper venue for related actions." Brown, 463 B.R. at 339. Plaintiffs have filed not just one but *four* bankruptcy cases in the United States Bankruptcy Court for the Northern District of Alabama. Evidently, the district is familiar with the facts of this case, and moreover, many of Plaintiffs' claims directly hinge upon the bankruptcy court's orders themselves. Furthermore, given that Plaintiffs are challenging amounts of debt owed to ServisFirst – a creditor in each of the bankruptcy cases – the bankruptcy estates will be impacted by resolution of these claims if ServisFirst was found liable to one or more of the Plaintiffs for some portion of the debt. The Northern District of Alabama is thus best positioned to handle Plaintiffs' claims because the value of the bankruptcy estate could be directly impacted.

### b. Judicial Efficiency Favors Transfer

Judicial efficiency favors transfer in this case because "the coordinated resolution of this action and the Chapter [7] case…is in the interest of justice and further serves judicial efficiency." Yolo Capital, Inc., 2018 WL 576316, at *2. Particularly since Plaintiffs' legal claims belong to their bankruptcy estates as described in the preceding sections, adjudicating the claims in one district is most efficient. This third factor thus tips in favor of transfer in the interest of justice pursuant to § 1412.

### c. Ability to Receive a Fair Trial Favors Transfer

Plaintiffs have made no argument in response on this prong – and thus, the undersigned can find no reason as to why Plaintiffs could not receive a fair trial in the Northern District of Alabama. See (Document No. 23). In fact, as Defendant ServisFirst states, "the overwhelming majority of the alleged events described in Plaintiffs' complaint occurred in Alabama…[and] ServisFirst has its principal place of business in Alabama." (Document No. 15, p. 19). Therefore, "most [] witnesses are in Alabama, and Alabama is the better venue to compel the attendance of witnesses to provide live testimony." Id. Arguably, Alabama is the better forum for this dispute to receive a fair trial – thus, this factor tips in favor of transfer.

### d. Enforceability of Judgment Rendered Favors Transfer

Plaintiffs again make no argument on the enforceability of judgment rendered factor, and furthermore, the undersigned is well-persuaded by Defendant ServisFirst's argument on this element. See (Document No. 23). Defendant ServisFirst states that "[t]o the extent Plaintiffs' claims belong to their respective bankruptcy estates, Plaintiffs would lack standing to enforce any judgment that may be entered in [the Western District of North Carolina]." (Document No. 15, p. 20). This point is accurate, at least in part, as to Specialty Foods. "Because the causes of action…are part of the Chapter 7 bankruptcy estate…Trustee is the real party in interest with exclusive standing to…enforce…them." In re Staker, 2013 WL 1122802, at *4 (B.A.P. 10th Cir. Mar. 19, 2013). Specialty Foods' Chapter 7 case is still pending in the United States Bankruptcy Court for the Northern District of Alabama – therefore, any judgment rendered in this court in favor of or against Specialty Foods would not be enforceable except by Specialty Foods' trustee. This factor, therefore, favors transfer.

17

### e. Alabama's Interests in Having Local Controversies Decided within its Borders and Plaintiffs' Original Choice of Forum Favor Transfer

This is largely an Alabama-centric dispute, with the factual allegations stemming from a loan arrangement in Alabama between parties who, at the time, were all Alabama residents. Moreover, the debtors filed bankruptcy cases in the Northern District of Alabama. Undoubtedly, Alabama has an interest in deciding this local controversy within the state. Although Plaintiffs filed this lawsuit originally in state court in Avery County in North Carolina, after which Defendants timely removed this action to this Court, the Plaintiffs' original choice of forum is not entitled to as much weight. Indeed, "a plaintiff's choice of forum is not entitled to as much deference when analyzing transfer under § 1412 as when analyzing a transfer under 28 U.S.C. § 1404." Gibbs, 2018 WL 1460705, at *15. Plaintiffs' first claim attempts to enjoin the foreclosure of a property located in North Carolina that the bankruptcy courts in Alabama specifically permitted be foreclosed upon.

Having conducted an analysis of the relevant factors, the undersigned agrees with Defendant ServisFirst that this "case [appears to be] a vexatious, last-ditch effort for Plaintiffs to end-run the bankruptcy court's orders and evade their creditors." (Document No. 15, p. 2). Plaintiffs' response brief does not address why transfer would not be appropriate pursuant to § 1412 – in fact, their response brief does not address the statute at all. See (Document No. 23). Considering the totality of the circumstances here – in which six of the seven factors favor transfer to the Northern District of Alabama – the undersigned is persuaded that the reasons for transfer outweigh any arguments against it.

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Defendant ServisFirst's Motion To Transfer" (Document No. 14) is **GRANTED**. This case shall be **TRANSFERRED** to the United States District Court for the Northern District of Alabama.

**SO ORDERED**.

Signed: February 7, 2022

David C. Keesler
United States Magistrate Judge